SRM

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

**Jon Von Holten,**
Petitioner
-vs-
**Dora B. Schriro, et al.,**
Respondent(s)

CV-04-2785-PHX-DGC (JI)

**REPORT & RECOMMENDATION**
**On Petition for Writ of Habeas Corpus**
**Pursuant to 28 U.S.C. § 2254**

## I. MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at Florence, Arizona, filed an Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on February 3, 2005 (#10).  On June 20, 2005, Respondents filed their Response (#19). Petitioner filed a Reply on July 15, 2005 (#22).

The Petitioner's Petition is now ripe for consideration.  Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.


## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

## A. FACTUAL BACKGROUND

On September 21, 2000, the Pinal County Grand Jury indicted Petitioner on six counts of child molestation, based on allegations that during June, July and August, 1998 he sexually molested his two step granddaughters, Candice and Jessie Von Holten, who were both minors under the age of 15.  (Exhibit A, R.T. 9/21/00; Exhibit B, Indictment.)  (Exhibits #20) to the Answer (#19) are referenced herein as "Exhibit __.")

**B. PROCEEDINGS AT TRIAL**

In the trial court, Petitioner was represented by defense counsel Paula Cook. Petitioner entered into a Plea Agreement (Exhibit E), wherein Petitioner agreed to plead guilty to Counts I and II of the indictment in exchange for an agreement that the sentence on Count II would be lifetime probation. The Plea Agreement specified that as to Count I, "there are no agreements as to sentencing." (Exhibit E, Plea Agreement at 1.) Attached to the Plea Agreement was a Sentencing Addendum which specified a minimum sentence of 5 years, and a maximum of 15 years. (*Id.*)

On August 9, 2001, Petitioner entered a plea of guilty, after being advised by the Court as follows:

> THE COURT: Okay, sir. Mr. Von Holten, before we can go any further on it, I need to talk to you about the range of sentence available for those offenses. Now, the plea agreement, if accepted, basically says as to Count II you'd be put on a lifetime probation and I'll explain the probation in just a second, but as to Count I, there would be no agreement as to sentencing so that means that it can be anywhere in the range of sentencing I'll talk to you about.
> In addition, these sentences are required by law to be ordered served consecutively. Do you understand that?
> MR. VON HOLTEN: Yes, sir.
> THE COURT: Because of the nature of the offense. If, for example, you were given a prison sentence on Count I and then came out and were on lifetime probation and you violated the probation, you could receive up to the maximum sentence for that offense also. Any questions about that?
> MR. VON HOLTEN: No, sir.
> THE COURT: Okay. The range of sentence on this particular offense, Mr. Von Holten, it's on the addendum to your sentencing agreement. We made a change when I talked to the attorneys in chambers and that agreement or addendum has been initialed. Did you review that and initial it?
> MR. VON HOLTEN: Yes.
> THE COURT: And you went over the changes with your attorney?
> MR. VON HOLTEN: Yes, sir, I did.
> THE COURT: Okay, sir. The range of sentence available to the Court on each offense runs from a minimum sentence of five years up to a maximum sentence of fifteen years in prison.
> MR. VON HOLTEN: Yes, sir.

(Exhibit G, R.T. 8/9/01 at 5-7.)

The Court again clarified the sentencing issue:

> THE COURT: And so you understand and there won't be any question later on, on Count I you could receive up to the fifteen years in

- 2 -

prison and on Count II, if accepted by the Court, you will receive a lifetime probation.
        Do you understand all that?
        MR. VON HOLTEN: Yes, sir.

(*Id.* at 12-13.)

Petitioner appeared for sentencing on September 12, 2001, and was sentenced to seven years on Count I and lifetime probation on Count II.  (Exhibit J, M.E. 9/12/01; Exhibit K, R.T. 9/12/01 at 30.)  The trial court found that the plea was made "knowingly, intelligently, and voluntarily," and accepted the plea. (Exhibit G.  R.T. 7/31/01 at 20.)


**C.  PROCEEDINGS ON DIRECT APPEAL**

Having entered a plea of guilty, Petitioner was not entitled to file a direct appeal.  Ariz. Rev. Stat. § 13-4033(B) ("In noncapital cases a defendant may not appeal from a judgment or sentence that is entered pursuant to a plea agreement or an admission to a probation violation.").


**D.  PROCEEDINGS ON POST-CONVICTION RELIEF**

Petitioner filed a Notice of Post-Conviction Relief on or about October 15, 2001, and counsel John G. Schaus was appointed to represent Petitioner.  On May 29, 2002, counsel filed a Notice of Completion of Post-Conviction Review by Counsel and Motion for Extension of Time to Allow Defendant to File Amended Pro-Per Petition.  (Exhibit L.)  Counsel related that having reviewed the matter, he was unable to find an issue for review.  (*Id.* at 2.)

Petitioner did not file an amended PCR petition, but instead wrote a letter to the judge, asserting that his PCR counsel was biased and ineffective, that Petitioner had been under heavy medications at the time of his plea, and was intimidated by police officers into confessing, (Petitioner's Exhibit A.)  (Exhibits to Petitioner's "Amended Separate Appendix," #13, are referenced herein as "Petitioner's Exhibit ___.")

The trial court granted PCR counsel's motion to withdraw, and granted Petitioner forty-five days to file a supplemental brief. (Exhibit N, M.E. 6/19/02.)  After the time to supplement

expired, without Petitioner filing a supplemental brief, the trial court ordered the state to respond to Petitioner's earlier letter. The trial court indicated that after the response it would deem the matter "submitted to the Court for its review and decision." (Exhibit O, M.E. 9/5/02.) The state responded on October 17, 2002, arguing that they were incapable of responding to the conclusory letter. (Petitioner's Exhibit B.)

Petitioner's PCR Petition was summarily denied on October 24, 2002. (Exhibit P, M.E. 10/24/02.)

On November 6, 2002, Petitioner filed a Reply (Petitioner's Exhibit C) with the help of another inmate, and argued five grounds for relief [1]:

1.      Defense counsel was ineffective for failing to obtain a competency exam for Petitioner.

2.      Petitioner's plea was not knowingly and voluntarily made because: (a) trial counsel advised Petitioner that the agreement was "for time served and lifetime probation," and (b) Petitioner was suffering from "delirium and dementia."

3.      Improper amendment to the indictment, changing the offense date.

4.      Petitioner was coached through the sentencing hearing, and was instructed to lie to the court, including misrepresenting whether he was taking medications.

5.      The trial court failed to *sua sponte* order a competency examination, despite the fact that Petitioner was obviously coached through the plea hearing and sentencing.

The Petitioner's Reply was apparently never considered by the Court.

Petitioner then filed a Petition for Review by the Arizona Court of Appeals, asserting the following six grounds for relief:

1.      The trial court denied Petitioner his right to appeal by failing to comply with

---

[1]   Petitioner's Exhibit C is not a conformed copy of the Reply, but reflects a signature and service date of October 4, 2002. The trial court's docket sheet, however, reflects a filing date of November 6, 2002 for the Reply, after the Court's ruling on the Petition. (Exhibit R, Index of Record, at 6, Item 77.) The Petition for Review argued that the filing had been submitted on October 27, 2002, but had been returned because Petitioner neglected to sign it. (Exhibit Q, Petition for Review at 2.)

1         Arizona Rule of Criminal Procedure 32.6, which required that Petitioner be

2         given fifteen days to file a reply in support of Petitioner PCR petition.

3     2.    Trial counsel was ineffective for failing to pursue a mental competency

4         examination of Petitioner.

5     3.    Petitioner's plea was not knowingly and voluntarily entered because: (a)

6         Petitioner had been told by defense counsel that his plea agreement was for time

7         served and lifetime probation; and (b) Petitioner was suffering from "delirium

8         and dementia."

9     4.    The indictment had been improperly amended, changing the offense date.

10    5.    Petitioner was coached through the sentencing hearing, and was instructed to lie

11        to the court, including misrepresenting whether he was taking medications.

12    6.    The trial court failed to *sua sponte* order a competency examination, despite the

13        fact that Petitioner was obviously coached through the plea hearing and

14        sentencing.

15  (Exhibit Q, Petition for Review.)  The Petition for Review was summarily denied on April 16,

16  2004.  (Amended Petition, #10, Exhibit 2, Order 4/16/04.)

17

18  **E.  PRESENT FEDERAL HABEAS PROCEEDINGS**

19     **Amended Petition** - Petitioner instituted this federal habeas proceeding by filing his

20  Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on August 25, 2004 (#1).

21  That Petition was dismissed with leave to amend (#8), and on February 3, 2005 Petitioner filed

22  the present Amended Petition (#10).  Petitioner also filed, on April 14, 2005, an amended

23  Memorandum of Law and Authorities (#13) and an Amended Appendix (#14).  Petitioner's

24  Petition alleges seven grounds for relief:

25     1.    Petitioner's due process rights were violated when the trial court deemed his

26        letter to the court to be his PCR petition.

27     2.    Petitioner's due process rights were violated when the trial court ruled on the

28        PCR petition before the expiration of the time for him to file his reply.

3.       Ineffective assistance of counsel as a result of counsel's failure to act on Petitioner's diminished mental capacity resulting from a machete blow to the head and medications.

4.       Ineffective assistance of counsel in misrepresenting the stipulations concerning sentencing in the plea agreement.

5.       Petitioner's due process rights were violated when the indictment was amended to change the offense dates.  In his Amended Memoranda of Law, Petitioner also argues that counsel was ineffective in the handling of the amendment.  (#12 at 11-13.)

6.       Ineffective assistance of counsel as a result of counsel's coaching Petitioner to misrepresent his use of medications at sentencing.

7.       Petitioner's due process rights were violated when the trial court failed to act on Petitioner's reliance upon defense counsel to formulate responses at sentencing.

**Response** - On June 20, 2005, Respondents filed their Answer (#19) and Exhibits (#20).  Respondents assert that Petitioner has procedurally defaulted all of his claims because he failed to seek review of his petition for post-conviction relief by the Arizona Supreme Court, and because he failed to fairly apprise the state courts of his federal claims.  Respondents also assert that Petitioner's claims are without merit.

As to Ground One, Respondents argue that Petitioner has no right to post-conviction relief counsel, and thus cannot assert ineffectiveness of that counsel.  Respondents also argue that any denial of due process in his post-conviction relief proceedings is not a cognizable habeas claim because he is incarcerated on the basis of his guilty plea, not the subsequent state review proceedings.

As to Ground Two, Respondents argue that Petitioner has no constitutional right to appellate review, and therefore any denial of "full, fair, and meaningful appellate review" in his state post-conviction relief proceedings does not state a cognizable federal claim.

As to Grounds Three, Four and Six, Respondents assert that these claims all depend

1    upon the argument that Petitioner was promised a "time-served" plea, which is refuted by the

2    record.     Respondents further argue that the record refutes Petitioner's claim that he was

3    taking medications and suffering mental health problems that rendered his plea involuntary, and

4    that Petitioner has failed to rebut the state court's finding of voluntariness with clear and

5    convincing evidence as required by 28 U.S.C. § 2254(e)(1).

6         As to Ground Five, Respondents argue that amendments to indictments are matters of

7    state law, and thus this ground asserts a non-cognizable state law claim.

8         As to Ground Seven, Respondents argue that there is no constitutional requirement that

9    the factual basis of a plea be addressed at the plea hearing, and that in any event the trial court

10   did address the factual basis with Petitioner.

11   **Reply** - On July 15, 2005, Petitioner filed his reply, captioned "Response to

12   Respondent's Answer" (#22).  Petitioner argues that presentation of his claims to the Arizona

13   Court of Appeals was sufficient to exhaust his "available" remedies, and was in accordance with

14   the advice he received from his appointed counsel.  Petitioner argues that any claim of

15   procedural default was waived by the trial court's failure to comply with its own procedural

16   requirements.

17        As to Ground **One**, Petitioner argues that he was entitled to effective assistance of

18   counsel on his PCR petition because state law extended such a right to pleading defendants,

19   and Petitioner is entitled to due process in his PCR proceedings.  On Ground **Two**, Petitioner

20   argues that state law entitles him to appeal.  On Grounds **Three**, **Four** and **Six**, Petitioner

21   argues that the record supports his claim that he was advised by defense counsel that he would

22   receive a time served sentence, and that his mental capacity was adversely affected by his

23   medications and the influence and coaching of counsel.  On Ground **Five**, Petitioner argues

24   that the Arizona Constitutions' guarantee of an indictment confers a federal right.  On Ground

25   **Seven**, Petitioner argues that the Arizona Rules of Criminal Procedure guarantee an

26   examination on the factual basis of the plea, and obtaining Petitioner' assent to the judge's

27   description of the facts was not sufficient.  Petitioner argues that the record at sentencing

28   reflects that the factual basis was obtained through counsel and not directly from Petitioner.

### III. APPLICATION OF LAW TO FACTS

**A.  EXHAUSTION AND PROCEDURAL DEFAULT**

**1.  Exhaustion Requirements**

A federal court has authority to review a federal constitutional claim presented by a state prisoner only if available state remedies have been exhausted.  *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)(per curiam). The exhaustion doctrine, first developed in case law has been codified at 28 U.S.C. § 2254.

**Available Remedies** - Respondents argue that Petitioner's Ground One, and indeed all his grounds for relief, are not properly exhausted because Petitioner did not present them to the Arizona Supreme Court.   Ordinarily, a petitioner has not satisfied the exhaustion requirement unless he has fairly presented his claim to the highest state court.   *Roettgen v. Copeland*,  33 F.3d 36, 38 (9th Cir. 1994).  Nonetheless, in *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999) the Supreme Court recognized that it is only "available" remedies that must be exhausted, and that requiring prisoners to pursue discretionary review by state courts may result in an unwelcome increase in filings with state courts. 526 U.S. at 847.  Thus, the Court instructed that habeas courts are not to ignore state rules or law making a given procedure "unavailable." *Id.*  In his concurrence in *O'Sullivan,* Justice Souter noted: "I understand that we leave open the possibility that a state prisoner is likewise free to skip a procedure even when a state court has occasionally employed it to provide relief, so long as the State has identified the procedure as outside the standard review process and has plainly said that it need not be sought for the purpose of exhaustion." *Id.* at 1735 (Souter, J. concurring).

In *O'Sullivan*, the Supreme Court specifically cited *State v. Sandon*, 161 Ariz. 157, 777 P.2d 220 (1989).  In *Sandon*, the Arizona Supreme Court noted that there was no right to appeal to the Arizona Supreme Court except in cases where the death sentence or life imprisonment is imposed, citing Ariz. Rev. Stat. A.R.S. § 12-120.21(A)(1). *Sandon*, 161 Ariz. at 158, 777 P.2d at 221.  Thus, the Arizona Supreme Court held that a petition for review to the Arizona Supreme Court was not required to exhaust state remedies for federal habeas purposes.

1    In *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999), the Ninth Circuit relied

2    on *O'Sullivan* and *Sandon* to conclude that absent a death penalty or life sentence, Arizona

3    state prisoners have exhausted claims presented in habeas petitions if they have been ruled

4    upon by the Arizona Court of Appeals. *Id.* at 1009-10.

5    Respondents cite the recent Supreme Court decision in *Baldwin v. Reese,* 541 U.S. 27

6    (2004), decided March 2, 2004, as rejecting the reasoning of *Swoopes*.  The Ninth Circuit has,

7    however, since *Baldwin*, reiterated its conclusion in *Swoopes*.  In *Castillo v. McFadden*, 399

8    F.3d 993 (9th Cir. 2005), decided February 24, 2005, the court noted:

9
10
> "In cases not carrying a life sentence or the death penalty, 'claims of
> Arizona state prisoners are exhausted for purposes of federal habeas
> once the Arizona Court of Appeals has ruled on them.' *Swoopes v.
> Sublett*, 196 F.3d 1008, 1010 (9th Cir.1999).

11   *Castillo*, 399 F.3d at 998, n. 3.  Indeed, the *Castillo* decision even cites to *Baldwin*. *Id.* at 998.

12   Moreover, nothing in the *Baldwin* decision serves to undermine the rationale of

13   *Swoopes*.  Respondents cite the portion of *Baldwin* which notes that the state habeas petitioner

14   is required to present his claims "in each appropriate state court (including a state supreme

15   court with powers of discretionary review)." *Baldwin,* 541 U.S. at 29.  However, the question

16   of "how" to present (e.g. is the state court required to search the record below for federal

17   claims) was before the *Baldwin* Court, not the question of "where" to present. Moreover, that

18   very portion of *Baldwin* cites *O'Sullivan* as one of its authorities.  *O'Sullivan* itself stands

19   for the proposition that the mere fact that review by a court is "discretionary" does not make

20   it unavailable for exhaustion purposes.  *O'Sullivan* also, recognized, however, that not all

21   discretionary procedures are "available."

22
23
24
25
> The exhaustion doctrine, in other words, turns on an inquiry into what
> procedures are "available" under state law. In sum, there is nothing in the
> exhaustion doctrine requiring federal courts to ignore a state law or rule
> providing that a given procedure is not available. We hold today only that
> the creation of a discretionary review system does not, without more,
> make review in the Illinois Supreme Court unavailable.

26   *O'Sullivan,* 526 U.S. at 847-848.

27   Respondents argue that *Swoopes* somehow misread *Sandon* and other Arizona

28   decisions.  Even if this Court were convinced that this were so, this Court cannot overrule the

1   decision of the Ninth Circuit Court of Appeals in *Swoopes*.

2          Respondents reference the fact the Arizona Supreme Court has exercised discretionary

3   review in a substantial number of cases since *Sandon*.  This is irrelevant.  In *O'Sullivan*,

4   Justice Souter noted that it was not controlling that the "state court has occasionally employed

5   [a procedure for discretionary review] to provide relief."  Indeed, *Swoopes* was not based upon

6   some rejection of jurisdiction by the Arizona Supreme Court, but upon the state court's

7   expression that its jurisdiction was "outside the standard review process and has plainly said

8   that it need not be sought for the purpose of exhaustion."  *O'Sullivan*, 526 U.S .at 1735

9   (Souter, J. concurring). The Arizona courts have not retreated from *Sandon*.  Until the Arizona

10  Supreme Court revises its expression in *Sandon* that its review is not necessary for

11  exhaustion, or the Supreme Court overrules *O'Sullivan*, this Court must conclude that

12  *Swoopes* remains good law. Based upon the foregoing, the undersigned concludes that the

13  rationale and holding of *Swoopes* remains in tact.

14         Because Petitioner received neither a life sentence nor the death penalty, the

15  presentation of his claims to the Arizona Court of Appeals was sufficient to exhaust his state

16  remedies.

17         **Fair Presentment** - However, to result in exhaustion, claims must not only be

18  presented in the proper forum, but must be "fairly presented."  That is, the petitioner must

19  provide the state courts with a "fair opportunity" to apply controlling legal principles to the

20  facts bearing upon his constitutional claim.  28 U.S.C. § 2254; *Picard v. Connor,* 404 U.S.

21  270, 276-277 (1971).  A claim has been fairly presented to the state's highest court if the

22  petitioner has described both the operative facts and the federal legal theory on which the

23  claim is based.  *Kelly v. Small*, 315 F.3d 1063, 1066 (9th Cir. 2003).

24         It is true that a petitioner need not recite "book and verse on the federal constitution,"

25  *Picard v. Connor*, 404 U.S. 270, 277-78 (1971) (quoting *Daugherty v. Gladden*, 257 F.2d

26  750, 758 (9th Cir. 1958)).  However, it is not enough that all the facts necessary to support the

27  federal claim were before the state courts or that a "somewhat similar state law claim was

28  made."  *Anderson v. Harless*, 459 U.S. 4, 6 (1982)(per curiam). As the Supreme Court

recently observed, a state prisoner may so alert the state courts "by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Baldwin*, 541 U.S. at 32.

Moreover, "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin,* 541 U.S. at 32. The Arizona habeas petitioner "must have presented his federal, constitutional issue before the Arizona Court of Appeals within the four corners of his appellate briefing." *Castillo,* 399 F.3d at 993.

Here, to have exhausted his claims, Petitioner must have plainly presented them to the Arizona Court of Appeals, in his Petition for Review from the denial of his post-conviction relief.  A review of that petition reveals the following:

a.      **Ground One - Use of Letter** - Ground One asserts that Petitioner's due process rights were violated when the trial court deemed his letter to the court to be his PCR petition. Although Issue I of the Petition for Review attacked the trial court's failure to allow time to reply to the response to the PCR, it did not discuss the trial court's treatment of the letter/PCR petition.  (Exhibit Q at 2-3.)  Thus, Ground One was never fairly presented.

b.      **Ground Two - Premature Ruling** - In Ground Two, Petitioner asserts his due process rights were violated when the trial court ruled on the PCR petition before the expiration of the time for him to file his reply.  The operative facts of this claim were the essence of Issue I in the state petition.

What Petitioner did not do was reference any federal law in making this claim to the Arizona Court of Appeals.  Petitioner's description of the issue asserted that the trial court's premature ruling  had denied him "his full and fair appellate [sic] rights." (Exhibit Q at 1.)  The substance of the state petition argued that the trial court had violated various state procedural rules, and had denied Petitioner "this fundamental right of full and fair appellate review." (*Id.* at 3.)  Petitioner never invoked the concepts of

1   federal "due process," never cited to any federal constitutional or statutory provisions,

2   and never referenced any federal cases.

3       Thus, although the operative facts of Ground Two were presented, Petitioner's

4   federal claim was not fairly presented.

5   c.   **Ground Three - IAC re Competency** - Petitioner's Ground Three argues ineffective

6   assistance of counsel as a result of counsel's failure to act on Petitioner's diminished

7   mental capacity.  In Issue II of his Petition for Review, Petitioner plainly asserted a

8   federal ineffective assistance of counsel claim, citing *Bean v. Calderon*, 163 F.3d

9   1073 (9th Cir. 1998) (discussing ineffective assistance in failure to present mitigating

10  evidence of mental impairment at sentencing). (Exhibit Q at 3.) While for precedential

11  purposes, *Bean* was less than "on all fours" support for Petitioner's claim, it was

12  sufficient to alert the state court that Petitioner was asserting a federal ineffective

13  assistance claim. The operative facts were also fairly presented, with Petitioner arguing

14  that "Defense counsel know that the defendant was hit in the head with a machete. . . and

15  was on heavy medication."  (Exhibit Q at 3.)  Therefore, Ground Three was fairly

16  presented and thus properly exhausted.

17  d.   **Ground Four - IAC re Sentencing** - Ground Four of the Petition argues ineffective

18  assistance of counsel in misrepresenting the stipulations concerning sentencing in the

19  plea agreement.  Petitioner's state filing included the assertion under Issue III that the

20  "plea agreement that was explained to the defendant by defense counsel, was for time

21  served and life time probation."  (Exhibit Q at 5.)

22      The state filing does not make any claim in Issue III founded upon ineffective

23  assistance of counsel.  The list of issues describes Issue III as: "That the defendant was

24  not fully aware of the terms of the plea agreement at the time he plead guilty or at

25  sentencing."  (*Id.* at 1.)  The only indication that this issue might have been founded

26  upon ineffective assistance of counsel, rather upon the knowing and voluntary nature

27  of the plea, was the statement "had defense counsel performed her duty and notify [sic]

28  the court of her suspicion that something might not be right with the defendant . . . then

the court would have precluded from accepting the plea." (*Id.* at 6.) That vague allusion to "duty" does not, however, amount to fair presentation of an ineffective assistance claim.

Petitioner did, while summarizing his argument on these facts in his Conclusion to his state petition, note that "Defense counsel was ineffective in failing to ensure that the defendant understood the plea agreement." (Exhibit Q at 11.) However, Petitioner does not identify this claim as being founded upon a federal right to effective assistance of counsel. A simple reference to ineffective assistance of counsel is not sufficient to fairly present a *federal* claim under the Sixth Amendment. *Lyons v. Crawford*, 232 F.3d 666, 668-69 (9th Cir.2000), as amended, 247 F.3d 904 (9th Cir.2001). *See also Baldwin*, 541 U.S. at 33 (discussing sufficiency of mere reference to "ineffective assistance"); *Galvan v. Alaska Dept. of Corrections,* 397 F.3d 1198, 1204 (9th Cir. 2005) (no fair presentment where petitioner's state brief "did not say that she was deprived of her Sixth Amendment right to the effective assistance of counsel"). Thus, even assuming the mere allusion that "Defense counsel was ineffective" were sufficient to raise a claim of ineffective assistance, it would not fairly raise a *federal* claim of ineffectiveness.

Based upon the foregoing, the undersigned finds that Ground Four was not properly exhausted. Nonetheless, because the matter of fair presentation is debatable, the undersigned will address the merits of this claim.

e.  **Ground Five** - **Amendment of Indictment** - Ground Five of the Petition asserts that Petitioner's due process rights were violated when the indictment was amended to change the offense dates. In his Amended Memoranda of Law, Petitioner also argues that counsel was ineffective in the handling of the amendment. (#12 at 11-13.) Issue IV of the state Petition for Review plainly raised the operative facts of the amendment to the indictment in chambers discussion with counsel. (Exhibit Q at 7.)

However, the description of issues in the State petition merely described this as an "illegal amendment." (*Id.* at 1.) The substance of the state petition went on to

argue that because the amendment was discussed and resolved outside Petitioner's presence, it violated his "fundamental right to be present at all hearings , under both the state and federal constitution." (*Id.* at 8.)  Such a broad generality is not adequate to challenge the propriety of the amendment on due process grounds, or the effectiveness of counsel.  *See Gray v. Netherland,* 518 U.S. 152, 163 (1996) ("it is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court").  *See also Hiivala v. Wood,* 195 F.3d 1098, 1106 (9th Cir. 1999).  "In short, the petitioner must have either referenced specific provisions of the federal constitution or cited to federal or state cases involving the legal standard for a federal constitutional violation." *Castillo v. McFadden,* 399 F.3d 993, 999 (9th Cir. 2005).

While there might be an argument that Petitioner managed to fairly present a confrontation clause claim, that would not amount to exhaustion of his present due process and ineffective assistance claims challenging the amendment.  Although a federal habeas petitioner may reformulate somewhat the claims made in state court, *Tamapua v. Shimoda*, 796 F.2d 261, 262 (9th Cir. 1986), rev'd in part on other grounds by *Duncan v. Henry*, 513 U.S. 364 1995), the substance of the federal claim must have been "fairly presented" in state court. *Anderson v. Harless*, 459 U.S. 4, 6 (1982)(per curiam); *Picard v. Connor,* 404 U.S. 270, 278 (1971); *Tamapua*, 796 F.2d at 262. *Cf. Lounsbury v. Thompson*, 374 F.3d 785, 788 (9th Cir. 2004) (procedural and substantive due process claims attacking competency sufficiently intertwined to result in exhaustion of both.)

Ground Five was not fairly presented, and was not properly exhausted.

f.    **Ground Six - IAC re Coaching at Sentencing** - For his Ground Six, Petitioner argues that he received ineffective assistance of counsel as a result of counsel's coaching Petitioner to misrepresent his use of medications at sentencing.  Issue V of the state petition clearly asserts a claim of ineffective assistance "under both State and Federal Constitution [sic]," arising out of counsel's coaching of Petitioner to misrepresent his

status at the sentencing hearing. (Exhibit Q at 8-9.) Accordingly, Ground Six was fairly presented and properly exhausted.

g.    **Ground Seven - Due Process at Sentencing** - For Ground Seven, Petitioner argues that his due process rights were violated when the trial court failed to act on Petitioner's reliance upon defense counsel to formulate responses at sentencing, and to address Petitioner personally.  The core facts upon which Petitioner relies were argued in Issue VI of the state petition.  (Exhibit Q at 10.)

In the body of his state petition, Petitioner did not assert this as a federal due process claim.  Rather, Petitioner argued on the basis of "statutory mandates" and "defendant's full and fair trial rights." (Exhibit Q at 10.)  In his Conclusion, however, Petitioner did summarize the trial court's failure to act on Petitioner's reliance on counsel at sentencing as a denial of his "fair trial rights guaranteed him under both the state and federal constitution." (*Id.* at 12.)  However, Petitioner failed to identify any particular federal constitutional provisions upon which he relied, or to otherwise give the state court adequate notice of the federal claim being asserted.  *See  Castillo,* 399 F.3d at 999.

Accordingly, Ground Seven was never fairly presented nor properly exhausted.

**Summary re Exhaustion** - Thus, Petitioner has fairly presented and properly exhausted Grounds Three and Six.  Grounds One, Two, Four, Five and Seven were not fairly presented and are not properly exhausted.

**2.  Procedural Default**

"If state remedies have not been exhausted, a district court must dismiss a petition filed pursuant to section 2254." *Johnson v. Lewis*, 929 F.2d 460, 463 (9th Cir. 1991).   That dismissal should be *without prejudice* to the petitioner refiling his federal habeas action upon exhaustion of his state remedies. *Id.*  Thus, the Court would ordinarily be required to dismiss without prejudice Grounds One, Two, Four, Five, and Seven of the Petition.

However, where a petitioner has failed to properly exhaust his available administrative

or judicial remedies, and those remedies are now no longer available because of some procedural bar, the petitioner has "procedurally defaulted" and is generally barred from seeking habeas relief.  Dismissal *with prejudice* of a procedurally barred or procedurally defaulted habeas claim is generally proper absent a "miscarriage of justice" which would  excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

Respondents assert that Petitioner's claims are now procedurally barred under Arizona's timeliness rules.   Under Ariz.R.Crim.P. 31.3, the time for filing a direct appeal expires twenty days after entry of the judgment and sentence.   Accordingly, direct appeal is no longer available.  Further, Ariz.R.Crim.P. 32.4 requires that petitions for post-conviction relief (other than those which are "of-right") be filed "within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is the later."  *See State v. Pruett*, 185 Ariz. 128, 912 P.2d 1357 (App. 1995) (applying 32.4 to successive petition, and noting that first petition of pleading defendant deemed direct appeal for purposes of the rule).   While Rule 32.4(a) does not bar dilatory claims if they fall within the category of claims specified in Ariz.R.Crim.P. 32.1(d) through (h), Petitioner has not asserted that any of these exceptions are applicable to him. Accordingly, review through Arizona's post-conviction relief process is no longer possible.

Therefore, Petitioner has procedurally defaulted his Grounds One, Two, Four, Five, and Seven for relief, and as to these Grounds, the Petition must be dismissed with prejudice absent a showing of cause and prejudice or actual innocence.

## 3.  Cause and Prejudice and Actual Innocence

**Cause and Prejudice** - If the habeas petitioner has procedurally defaulted on a claim, he may not obtain federal habeas review of that claim absent a showing of "cause and prejudice" sufficient to excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).  Petitioner has not shown any basis for a finding of cause or prejudice.

**Actual Innocence** - The standard for "cause and prejudice" is one of discretion intended to be flexible and yielding to exceptional circumstances.  *Hughes v. Idaho State Board of*

1  *Corrections*, 800 F.2d 905, 909 (9th Cir. 1986).  Accordingly, failure to establish cause may

2  be excused "in an extraordinary case, where a constitutional violation has probably resulted in

3  the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986)

4  (emphasis added).  Petitioner has not shown any basis for a finding of actual innocence.

5

6  **4.  Summary re Exhaustion and Procedural Default**

7       Having failed to establish cause and prejudice or actual innocence to avoid the effect

8  of his procedural default, Petitioner's Grounds for Relief One, Two, Four, Five, and Seven,

9  must be dismissed with prejudice.

10

11  **B.  EVIDENTIARY HEARING**

12       The undersigned submits this Report and Recommendation without having afforded

13  Petitioner an evidentiary hearing.  Petitioner's right to an evidentiary hearing is limited by 28

14  U.S.C. § 2254(e)(2), which provides:

15           (2) If the applicant has failed to develop the factual basis of a claim
             in State court proceedings, the court shall not hold an evidentiary hearing
16           on the claim unless the applicant shows that--
                 (A) the claim relies on--
17                   (i) a new rule of constitutional law, made retroactive to cases on
             collateral review by the Supreme Court, that was previously unavailable;
18           or
                     (ii) a factual predicate that could not have been previously
19           discovered through the exercise of due diligence; and
                 (B) the facts underlying the claim would be sufficient to establish by
20           clear and convincing evidence that but for constitutional error, no
             reasonable factfinder would have found the applicant guilty of the
21           underlying offense.

22  The Supreme Court has held that "[u]nder the opening clause of § 2254(e)(2), a failure to

23  develop the factual basis of a claim is not established unless there is a lack of due diligence,

24  or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams v.*

25  *Taylor*, 529 U.S. 420, 432 (2000).  Petitioner has "failed to develop the factual basis" of his

26  ineffective assistance claims in the State court proceedings, and such failure was the result of

27  his lack of due diligence in pursuing his claims.

28       Petitioner's opportunity to create a record on these claims was in his state PCR

1   proceeding.  Petitioner failed to do so.  In order to obtain an evidentiary hearing in an Arizona

2   PCR proceeding, a defendant must file the appropriate petition, and that petition must present

3   non-procedurally-precluded claims that present  "a material issue of fact or law."  If the

4   defendant does so, then the evidentiary hearing is automatically scheduled by the state court.

5   *See* Ariz.  R.  Crim.  Proc.  32.6 (Summary Disposition) and 32.8 (Evidentiary Hearing).

6        In this case, after Petitioner's PCR counsel filed his notice of inability to find a basis

7   for relief and the Court granted counsel's motion to withdraw, Petitioner was provided an

8   opportunity to file a supplemental brief.  Petitioner was given 45 days from June 19, 2002 to

9   do so.  (Exhibit N, M.E. 6/19/02.)  Petitioner did not file a supplemental brief.

10        After the time for filing a supplemental petition had expired, with no brief filed, the trial

11   court went to the extraordinary lengths of treating Petitioner's letter to the court, sent June 11,

12   2002, prior to the setting of the supplemental briefing deadline, as a supplemental brief.  The

13   trial court directed service of the letter on the prosecution, and gave the prosecution 30 days

14   to respond.  The trial court indicated that it would thereafter rule on the Petition.  (Exhibit O,

15   M.E. 9/5/02 ("the matter of post-conviction relief shall thereafter be deemed submitted to the

16   Court for its review and decision.").)  The prosecution did respond, and the trial court did rule

17   thereafter.  (Exhibit P, M.E. 10/24/02.)  On November 6, 2002, after the trial court's ruling,

18   Petitioner filed his Reply brief.[2]

19        At no time did Petitioner seek an extension of time to file his supplemental brief, or

20   complain to the trial court about the trial court's use of Petitioner's letter as that brief.

21   Petitioner did not request an evidentiary hearing, and presented no evidence in support of his

22   claims, other than the bald statements in his letter (and his belated reply).  Thus, the trial court

23   proceeded pursuant to the authority in the Arizona Rules of Criminal Procedure, and

24   summarily disposed of the claims.  Ariz.  R.  Crim.  Proc.  32.6(c) ("If the court...determines

25   that no remaining claim presents a material issue of fact or law...the court shall order the

26   petition dismissed.").  Petitioner did not complain to the trial court about its stated intent to

27   _____

28        [2]  Petitioner asserted to the Arizona Court of Appeals that he had mailed his reply earlier, on October 27, 2002 but forgot to sign it, and had to resend it on November 5, 2002.  (Exhibit Q, Pet.  for Rev.  at 2.)

1   rule after the filing of the state's response, without awaiting a reply, and did not complain to

2   the trial court thereafter.  (Exhibit R, Index of Record, at 5-6.)  Rather, Plaintiff waited until

3   his Petition for Review to the Arizona Court of Appeals to assert that the trial court had acted

4   improperly in summarily disposing of Petitioner's PCR petition.  (Exhibit Q, Petition for

5   Review at 2.)

6        Moreover, the degree of information provided by Petitioner in his briefs to the trial

7   court were, at best, slim.  Petitioner provided no exhibits or affidavits, and did not verify his

8   filings.  While Petitioner's Reply did indicate he had experienced trouble obtaining his prison

9   medical records, and sought assistance in obtaining those records, Petitioner did not then and

10  has not yet explained why those records have not been made available.[3]

11       Because Petitioner did not use due diligence in developing the record before the trial

12  court, he is precluded from now being afforded an evidentiary hearing, unless the claim was

13  not legally or factually available before, and the facts underlying the claim would preclude a

14  guilty verdict. 28 U.S.C. § 2254(e)(2); *Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1242 (9th

15  Cir. 2005).   Petitioner's claim was legally and factually available.  Moreover, Petitioner's

16  claims would not, in any event, effect the ability of a jury to find him guilty, because they relate

17  solely to the quality of his representation and the voluntariness of his plea.

18       Moreover, Petitioner's lack of diligence further precludes him from supplementing the

19  record in this proceeding without an evidentiary hearing. *Holland v. Jackson*, 542 U.S. 934,

20  124 S.Ct. 2736, 2738 (2004); *Cooper-Smith,* 397 F.3d at 1242.  Accordingly, any evidence

21  submitted by Petitioner with his Petition that was not already part of the state record cannot

22  now be considered by this Court.

23  / /

24  / /

25

26  _____

    [3]  Indeed, the only records ever submitted by Petitioner in support of his claims were the "acknowledged" letters
27  from three acquaintances which he appended to his state Petition for Review.  (Exhibit Q, Pet. for Rev.  at Exhibit B.)
    Those letters offer little more than laymen's observations that Petitioner's "mind and physical health deteriorated" while
28  he was in jail, that "he was not comprehending and would not exert his rights," and that Petitioner had expressed his
    belief that he would receive time served under the plea agreement.

## C.  STANDARD OF REVIEW

While the purpose of a federal habeas proceeding is to search for violations of federal law, not every error justifies relief.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [the law] incorrectly." *Woodford v. Visciotti,* 537 U. S. 19, 24– 25 (2002) (per curiam).  To justify habeas relief, a state court's decision must be "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" before relief may be granted.  28 U.S.C. §2254(d)(1).

However, where as here there is no reasoned rejection of the claim, it is impossible to ascertain whether the state court identified the correct law, or whether they applied it reasonably.  This Court is left to applying its own evaluation, comparing the outcome to that of the state court, and only then if there is a discrepancy can this court begin to evaluate whether the state court outcome was "contrary to or an unreasonable application of" Supreme Court law.  *See Himes v. Thompson,* 336 F.3d 848, 853 and n.3 (9th Cir. 2003) ("Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable").

**Intrinsic Validity of Factual Findings (Unreasonable Determination Test)** - Further, federal courts are not authorized to grant habeas relief based upon an error in a state court factual determination, unless the state decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  "Or, to put it conversely, a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004).  This standard of intrinsic review "applies most readily to situations where petitioner challenges the state court's findings based entirely on the state record. Such a challenge may be based on the claim that the finding is unsupported by sufficient evidence, or that no finding was made by the state court at all." *Id.* at 999 (citations omitted).

Here, the state courts issued postcard denials of Petitioner's ineffective assistance claims. Accordingly, except to the extent that the trial court made some relevant factual determination at trial, there are no state court factual findings to which this court may apply an intrinsic analysis and the "unreasonable determination" evaluation under 28 U.S.C. § 2254(d)(2).

Respondents argue that the state court's finding that the plea was entered "knowingly and voluntarily" is a finding entitled to deference by this Court. (Answer, #19 at 16.) However, a "knowing and voluntary" finding is not a finding of historical fact entitled to deference under 28 U.S.C. § 2254(d)(2), but a legal conclusion, albeit one entitled to its own deference under 28 U.S.C. § 2254(d)(1). *Lambert v. Blodgett*, 393 F.3d 943, 976-977 (9th Cir. 2004). Further, while the findings of historical fact underlying a voluntariness finding are themselves factual findings entitled to deference, *Lambert*, 393 F.3d at 977, here the trial court made no specific findings, but merely announced its conclusion of voluntariness. (Exhibit G, R.T. 7/31/01 at 20.) Thus, it is irrelevant that the determination of competence is a "fact" question, a state court determination of which is entitled to deference, *Torres v. Prunty,* 223 F.3d 1103 (9th Cir. 2000), because the state court made no factual finding of Petitioner's competency.

**Extrinsic Evaluation of Factual Findings (Presumption of Correctness)** - Where the state court has made reasonable findings of fact, a state prisoner is not free to attempt to retry the facts of his case in the federal courts. There is a well established presumption of correctness of state court findings of fact. This presumption has been codified at 28 U.S.C. § 2254(e)(1), which states that "a determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner has the burden of proof to rebut the presumption by "clear and convincing evidence." "State-court fact-finding may be overturned based on new evidence presented for the first time in federal court only if such new evidence amounts to clear and convincing proof that the state-court finding is in error." *Taylor*, 366 F.3d at 1000.

However, "[i]t is well-established that when the state courts do not make findings at all, no presumption of correctness attaches, and we must make our own findings." *Id.* at 1014.

1   "[W]here the state court should have made a finding of fact but neglected to do so...the

2   state-court factual determination is perforce unreasonable and there is nothing to which the

3   presumption of correctness can attach."  *Taylor,* 366 F.3d at 1000-1001.

4        **Summary re Standard of Review** - Because Petitioner failed to use due diligence in

5   forming a state record, he is precluded from presenting new evidence to this Court.  Because

6   the state court failed to make findings of fact or to provide explanations for its conclusions

7   of law, this Court cannot ascribe any significant deference to the work of the state court.  This

8   Court's determination must be factually based solely on the record before the state court, but

9   *de novo* in terms of the factual and legal conclusions.  The only deference possible is in the

10  final determination whether the state court's result was an unreasonable decision, under 28

11  U.S.C. § 2254(d)(1), in light of this Court's determination of the issues.

12

13  **C.  GROUND THREE: INEFFECTIVE ASSISTANCE AND COMPETENCY**

14       Petitioner's Ground Three for Relief asserts that Petitioner received ineffective

15  assistance of counsel as a result of counsel's failure to act on Petitioner's diminished mental

16  capacity resulting from a machete blow to the head and medications.  Petitioner argues:

17         Defense counsel was aware that Petitioner was hit in the head with a
    machete in December of 1999, resulting in Petitioner spending several

18         months in the hospital.  As a result of this, Petitioner was on heavy
    medication which caused many arguments between counsel and

19         Petitioner, as Petitioner had severe problems trying to understand and
    remember what trial counsel had explained to him.

20  (Amend.  Memo. #12 at 7.)

21       **Ineffective Assistance of Counsel** - To prevail on an ineffective assistance of counsel

22  claim, petitioner must show first that his attorney's performance fell below "the wide range of

23  professionally competent assistance," and, second, that there is a "reasonable probability that,

24  but for counsel's unprofessional errors, the result of the proceeding would have been

25  different." *Strickland v. Washington,* 466 U.S. 668, 687 (1984); *see also Hill v. Lockhart,*

26  474 U.S. 52 (1985) (holding that the *Strickland* test for ineffective assistance of counsel

27  applies to plea agreements).

28

            - 22 -

**__Deficient Performance__** - "When counsel has reason to question his client's competence to plead guilty, failure to investigate further may constitute ineffective assistance of counsel." *U.S. v. Howard,* 381 F.3d 873, 881 (9th Cir. 2004).   However, that does not imply that every mental impairment calls for a competency evaluation. "Not all people who have a mental problem are rendered by it legally incompetent." *Bouchillon v. Collins,* 907 F.2d 589, 593 (5th Cir. 1990).   "Competence is defined as the ability to understand the proceedings and to assist counsel in preparing a defense. When analyzing competence to plead guilty, we look to whether a defendant has "the ability to make a reasoned choice among the alternatives presented to him." *Miles v. Stainer,* 108 F.3d 1109, 1112 (9th Cir. 1997) (citations omitted) (quoting *Chavez v. United States*, 656 F.2d 512, 518 (9th Cir.1981)).

Thus, rather than attempting to assess mental health, "[r]equiring that a criminal defendant be competent has a modest aim:  It seeks to ensure that he has the capacity to understand the proceedings and to assist counsel."  *Godinez v. Moran,* 509 U.S. 389,  402 (1993). In a footnote, the *Bouchillon* court noted: "We venture to guess that if every accused were to be adjudged incompetent who was rendered depressed or apathetic at finding himself incarcerated and indicted on felony charges, few would ever be tried." *Id.* at 594, note 17.  In *Schoeller v. Dunbar,* 423 F.2d 1183 (9th Cir. 1970), the Ninth Circuit declined to reject a state court finding of competence, despite evidence of suicide threats, diagnoses of mental illness, and the defendant's request to receive the death penalty.  *But see id.* at 1186 et seq., Hufstedtler, Circuit Judge (dissenting).

Moreover, the trial court's duty to address issues of competence at a guilty plea proceeding is distinct from counsel's duty to evaluate his client's competency to enter into a plea agreement.  Thus, where defense counsel has been able to consult with a defendant at times of lucidity to determine a knowing and voluntary desire to plead guilty, it is not necessarily ineffective assistance to fail to challenge the defendant's purported lack of competence on the day that the plea is entered.  *Miles*, 108 F.3d at 1113.

Thus, the critical factual issue is whether counsel had sufficient knowledge of Petitioner's mental impairment that he should have investigated Petitioner's competence to

1    decide to enter a guilty plea.  However, Petitioner made no record in the state court on

2    counsel's knowledge of Petitioner's mental condition.  He offered the state court no evidence

3    that trial counsel was aware of Petitioner's prior injury by a machete blow to the head, nor that

4    counsel was aware of any remaining impairment from such injury.  Petitioner did not even

5    explain how counsel would have become aware of such head injury.  Nor does Petitioner offer

6    any evidence of counsel's knowledge of Petitioner's impairment from medications.  At most,

7    Petitioner offered his own unverified allegations:

8            Defense counsel had many arguments with defendant, as the defendant
             had trouble understanding counsel because of his mental condition, and
9            asked her many times to repeat her statements. Defense counsel's
             response was for her to get mad at the defendant, when he had trouble
10           remembering or understanding what she was saying.

11   (Exhibit Q, Petition for Review at 11.)

12           Defense counsel was further ineffective, as she had to know of
             defendant's mental condition from the sentencing hearing alone, as the
13           defendant was incapable of responding to the court on his own, and relied
             on defense counsel's words in order to get the plea accepted by the trial
14           court.

15   (*Id.* at 8.)

16           Thus, the only notice to defense counsel of Petitioner's purported mental difficulties

17   was Petitioner's difficulty in understanding counsel, and Petitioner's reliance upon counsel

18   at the hearing.  Neither of these occurrences is rare to the attorney client relationship with

19   perfectly competent counsel.  The legal system is complex, hence the need for counsel.

20   Explaining its intricacies to laymen is often a challenging, even exasperating process.

21           Likewise, the fact that counsel had to tell Petitioner everything to say at his hearings

22   is not particularly significant.  In a vacuum, that sounds ominous.  In reality, it is not rare for

23   fully competent defendants to consult with counsel throughout a hearing as important as a plea

24   or sentencing proceeding.  Indeed, there is good argument that doing so is the epitome of

25   wisdom and competence.

26           Petitioner further argues that counsel instructed him to lie to the court about his

27   medications.  Petitioner testified at the plea proceedings that he was not under the influence

28   of any medication:

THE COURT: Have you had any drugs, alcohol, or medication of any type in the last twenty-four hours?

MR. VON HOLTEN: No, sir.

(Exhibit G, R.T. 7/31/01, at 5.)  Petitioner argues that counsel knew this to be untrue, and had directed Petitioner to falsify this testimony.  Petitioner offers no basis for his conclusion about counsel's knowledge.  It is reasonable to assume that counsel was generally aware of Petitioner's taking of his heart medications, given their identification in the pre-sentence report and psychological evaluation.  That does not establish, however, counsel's knowledge of Petitioner's use of medications in the 24 hours prior to the plea hearing.  Even if it is assumed that counsel had such knowledge, the knowledge Petitioner attributes to counsel is simply that Petitioner was taking medication.  Petitioner does not offer any evidence or claim that counsel knew Petitioner was impaired as a result of those medications.

In the psychological evaluation conducted at the request of the prosecutor for sentencing purposes, Petitioner had reported to his polygraph examiner that he was taking "prescribed medications: Lopressor, Pascherone, Lasix and a potassium supplement."[4] (Exhibit C, Psych. Eval. at 5.)  Petitioner cites to the "PDR" to establish that these medications can result in impairment.  A risk of impairment from medication does not, however, require a conclusion that impairment has occurred.  Indeed, many medications as simple as cold remedies bear a risk of impairment.  That does not mandate a conclusion that a user of those remedies is, in fact, impaired, even if as Petitioner alleges occurred with him, excessive doses are given. Further, the "fact that the defendant was under the influence of medications does not automatically make him incompetent to change his plea nor render any such plea involuntary."

---

[4] "Lopressor" is "is used in the treatment of high blood pressure, angina pectoris (chest pain, usually caused by lack of oxygen to the heart due to clogged arteries), and heart attack."  *Thompson PDRHealth*, http://www.pdrhealth.com/drug_info/rxdrugprofiles/drugs/lop1235.shtml, last accessed 10/27/5. "Pascherone" or "Pacer one", whose generic name is amiodarone, "is an antiarrhythmic medication."  *See* http://www.drugs.com/mtm/P/Pacerone.html, last accessed 10/27/5.  "Lasix is used in the treatment of high blood pressure and other conditions that require the elimination of excess fluid (water) from the body." *Thompson PDRHealth*, http://www.pdrhealth.com/drug_info/rxdrug-profiles/drugs/las1220.shtml, last accessed 10/27/5.  "Supplementary potassium is used to treat potassium depletion states, e.g., from prolonged use of diuretics. It is also used to prevent potassium depletion in those on diuretics. Potassium may also have antihypertensive and cerebrovascular- and cardiovascular-protective activities."  *Id.* at http://www.pdrhealth.com/drug_info/nmdrugprofiles/nutsupdrugs/-pot_0208.shtml, last accessed 10/27/05.

1   *U.S. v. Rivera Martinez,* 693 F.Supp. 1358, 1363 (D.Puerto Rico,1988)

2       While Petitioner presents little to show why counsel should have pursued a question

3 of competence, there is significant credible evidence to show that competence was not an

4 issue.   In the course of his psychological evaluation, Petitioner denied "symptoms of

5 depression or symptoms and episodes of anxiety."  His mental condition was summarized as

6 follows:

> 7   There is no evidence of thinking problems of either content or process,
> though some ideation of persecution was noted.  He denies hallucinatory
> 8   experiences and there is no evidence of delusional thinking.  He denies
> having problems with attention, concentration or memory and there was
> 9   no evidence of any of these problems, although this is based primarily on
> observation as he was not tested directly for these issues.  He denies
> 10   being diagnosed as attention deficit hyperactivity disorder.   He is
> oriented times four and no evidence of gross neurocognitive deficits was
> 11   observed.

12 (Exhibit C, Psych. Eval. at 9.)   The pre-sentence report writer reported similarly:

> 13   <u>Health</u>:  The defendant reported enjoying good emotional health.
> Physically, the defendant said, he suffers from heart, liver, and kidney
> 14   problems.   He is currently taking medication to moderate his blood
> pressure and erratic heartbeat, and to aid in urination.   The defendant
> 15   indicated he has also had metal poisoning and several heart attacks.

16 (Exhibit H, Pre-Sentence Report at 7.)[5]

17       Moreover, apart from counsel's purported knowledge of Petitioner's mental condition,

18 Petitioner offered only the barest of evidence of any actual impairment.   He presented no

19 records on his medical condition other than the "acknowledged" statements of three friends.

20 He offered no other affidavits.  Not even his PCR Petition (Pet.'s Exhibit A), his PCR Reply

21 brief (Pet.'s Exhibit C), nor his Petition for Review (Exhibit Q) were verified.

22       The statements of Petitioner's friends included the following laymen's observations:

23       While in custody Jon was on a high salt diet when he was supposed to be

24 _____

25     [5] Petitioner dismisses the pre-sentence report as being clouded by trial counsel's presence at the interview.
Petitioner argues that "there was no reasonable explanation for defense counsel to be present at the pre-sentence
26 interview, as Petitioner had already entered his plea of guilty" other than "to prevent anyone from discovering defense
counsel's ineffectiveness, in that on this medication [Petitioner] was completely dysfunctional."  (Amend. Memo. #12
27 at 13.)  Petitioner ignores the fact that he had plead guilty to only some of the charges, and until sentencing risked
exposure on the other charges if the plea were withdrawn, e.g. because the trial judge rejected the agreements on
28 sentencing.   Accordingly, trial counsel appears to have been properly protecting Petitioner's rights against self-
incrimination on those other charges.

1
2
3
4
5

    on a low salt diet, his medication had been doubled and his state [of] mind and physical health deteriorated to the point that to hold a phone conversation he had to make notes as to what he wanted to talk about if he was taken of[f] track then he would become confused and have to start over again...While Jon was in Pinal County Detention Center his health and mental functions continued to deteriorate and he suffered several heart attacks...When Jon was in court his mind was so far gone that whenever he was asked a question he had to look at [Defense Counsel] Paula and she would indicate to him by a shake of her head how he should answer, yes or no.

6
7

(Exhibit Q, Petition for Review, at Exhibit B, Statement of Richard Grandbois.)

8
9

    Jon can no longer remember most of what he knew then, and now has trouble remembering things up to date.  After his head wound and heart attack in 19999 he started a self training program to retrain his memory but he never got back to normal.

10

(*Id.* at Statement of James Ozias.)

11
12
13
14
15

     I have known Jon since 1986, a then brilliant man with a photographic memory.  In 1992 he nearly died and was diagnosed as having cirrhosis of the liver.  He was left with 17% of his liver but his mental abilities were greatly diminished... In Dec. 1999 he suffered a serious head wound and subsequently a heart attack while hospitalized, leaving him with 30% of his heart function, further deteriorating his abilities to make sound judgment.
     I attended all but one of Jon's court hearings and spoke by phone and visits often.  I noticed he was not comprehending and would not exert his rights or ask the questions he needed to, in order to defend himself.

16
17

(*Id.* at Statement of Carol Grandbois.)

18
19
20
21
22
23
24

    Finally, Petitioner points to the fact that he was evaluated as showing signs of "dementia and delirium" upon his entry examination at the Arizona Department of Corrections.  However, Petitioner provided no evidence of such diagnosis, nor did he establish how that diagnosis (presumably occurring sometime after Petitioner's September 14, 2001 sentencing), would show  notice to counsel at Petitioner's guilty plea some six weeks earlier (on July 21, 2001). It would not be inconceivable for changes in medication in the interim, or even just the emotional effects of the intervening imposition of sentence, to have worsened Petitioner's mental state.

25
26
27
28

    In sum, Petitioner fails to provide sufficient evidence for this Court to conclude that counsel had sufficient notice that Petitioner was incapacitated at the time of his plea and sentencing to have made it unreasonable for counsel to have failed to pursue a claim of

incapacitation.

**Prejudice** - Moreover, in order to obtain relief on a claim of ineffective assistance in a guilty plea case, Petitioner must prove he was prejudiced from counsel's ineffectiveness by demonstrating a reasonable probability that but for his attorney's errors he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). Petitioner offers no persuasive showing on this element either.

Petitioner's plea resulted in the dismissal of four related counts, and a stipulation that one of the two counts pled to would not result in any increased prison sentence. With the exception of the discrepancy in the offense dates, Petitioner has not identified any real defense to the charges, save his own denials. Indeed, Petitioner does not now seek to go to trial as relief, but instead seeks to have this court enforce a purported plea agreement for time served. (Amend. Memoranda, #12 at 21.)

**Summary** - On the basis of the available record, Petitioner has failed to establish that trial counsel was ineffective for failing to challenge Petitioner's mental competence at the time of his plea.

## D. GROUND FOUR: INEFFECTIVE ASSISTANCE AND SENTENCING PREDICTION

For his Ground Four for relief, Petitioner argues that trial counsel was ineffective in misrepresenting the stipulations concerning sentencing in the plea agreement. Petitioner argues that trial counsel represented to him that the state's offer in the plea agreement was for sentences "as follows, Count I, time served, Count II lifetime probation." (Amend. Petition, #10 at 8.) However, Petitioner's purported belief flies in the face of the written terms of the plea agreement and Petitioner's statements at the change of plea proceeding.

The plea agreement provides:

> As to Count I, there are no agreements as to sentencing.
> As to Count II, the defendant shall be placed on lifetime probation.

(Exhibit E, Plea Agreement at 1.)

The Sentencing Addendum referenced in and attached to the Plea Agreement identified

the sentencing range:

> B)    Range of Sentence:
> **Mitigated** minimum          :_____
> **Minimum**                         : 5.0  years
> **Presumptive**                    : 10   years
> **Maximum**                        : 15  years
> **Aggravated** maximum       :_____

(Exhibit E, Plea Agreement, Sentencing Addendum at 1.)

At the change of plea proceeding, the trial court advised Petitioner as follows:

> THE COURT: Okay, sir.  Mr. Von Holten, before we can go any further on it, I need to talk to you about the range of sentence available for those offenses.  Now, the plea agreement, if accepted, basically says as to Count II you'd be put on a lifetime probation and I'll explain the probation in just a second.   But as to Count I, there would be no agreement as to sentencing so that means that it can be anywhere in the range of sentencing I'll talk to you about.
> In addition, these sentences are required by law to be ordered served consecutively.  Do you understand that?
> MR. VON HOLTEN: Yes, sir.
> * * *
> THE COURT: Okay, sir.  The range of sentence available to the Court on each offense runs from a minimum sentence of five years up to a maximum sentence of fifteen years in prison.
> MR. VON HOLTEN: Yes, sir.
> THE COURT: The presumptive sentence or the sentence normally given if a prison sentence is given is ten years in prison.
> * * *
> Any question about this part?
> MR. VON HOLTEN: No, sir.
> THE COURT: Okay, sir.  On this offense, both of them actually, probation is available.    That period of probation can be up to the rest of your natural lifetime; that is a lifetime probation.  Probation itself can be conditioned on up to twelve months in the Pinal County jail.  And as I've said, if you are placed on probation and you violate probation, you could receive up to the maximum sentence allowed for the offense.
> * * *
> MR. VON HOLTEN: Yes, Sir.

(Exhibit G., R.T. 7/31/01 at 5-8.)

Thus, Petitioner clearly entered his plea while making representations that he was aware that he was subject to sentencing under the plea agreement of up to 15 years in prison on Count I.  Although plea hearings are not always perfect nor uniformly invulnerable to subsequent challenge, a defendant's representation at a plea hearing that no promises exist carries a strong presumption of truthfulness. *Blackledge v. Allison*, 431 U.S. 64, 74 (1977). A reviewing court is entitled to credit a defendant's testimony at a change of plea hearing over his subsequent

affidavit asserting the existence of promises not contained in the plea agreement. *Cortez v. United States,* 337 F.2d 699, 702 (9th Cir.1964). *See also United States v. Moore,* 599 F.2d 310, 314 (9th Cir.1979), *cert. denied,* 444 U.S. 1024 (1980) (declarations in open court carry a strong presumption of verity); and *Chizen v. Hunter,* 809 F.2d 560, 562 (9th Cir.1986) (noting that statements made by a defendant in open court regarding the voluntariness of a plea carry a strong presumption of verity).

**Defective Sentencing Prediction** - Petitioner's representations at the change of plea and in the plea agreement might be reconciled with his claim of ineffective assistance, if it is assumed that Petitioner's concern is not a misrepresentation by counsel of the agreement but of the likely sentences. Indeed, Petitioner could have been sentenced to time served on Count I as a condition of probation. In fact, trial counsel argued at sentencing for such a sentence.

> MS. COOK: My specific request is that Jon has been in jail now for about a year. Your Honor knows, this case has taken a long time to resolve. My specific request is that he be placed on supervised probation with the special sex offender terms and conditions . . ..

(Exhibit K, R.T. 9/12/01 at 18.) It is not inconceivable that counsel could even have advised Petitioner to expect such a sentence. Assuming that transpired, counsel's actions would still not qualify as defective performance.

There is nothing wrong with defense counsel making a sentencing prediction. *See United States v. Ulano,* 468 F. Supp. 1054, 1067 (C.D. Cal. 1979), *aff'd,* 614 F.2d 1257 (9th Cir. 1980). Moreover, in *U.S. vs. Garcia,* 909 F.2d 1346 (9th Cir. 1990) the Ninth Circuit held that an erroneous prediction of a sentence by a defense attorney did not rise to the level of constitutionally deficient representation, and thus did not render a plea based upon such erroneous prediction involuntary.

Cases both prior to and since *Garcia* have differentiated between simple errors in predictions and a gross mischaracterization of the likely outcome. For example, in *U.S. vs. Michlin,* 34 F.3d 896 (9th Cir. 1994) the Ninth Circuit recognized that the court has "held that 'an erroneous prediction by defense attorney concerning sentencing does not entitle a defendant to challenge his guilty plea,' although an exception might be made in a case of 'gross

mischaracterization of the likely outcome.'" *Michlin,* 34 F.3d at 899 (citations omitted).   In *Iaea vs. Sunn,* 800 F.2d 861(9th Cir. 1986) defense counsel represented to the defendant that a guilty plea would give him a chance to receive probation.  That advice was defective because of mandatory minimum sentences which resulted in his receiving life sentences. The court found that such a gross mischaracterization (probation v.  mandatory life sentences) established defective performance by counsel and remanded the case for a determination on the prejudice component of the ineffective assistance claim. *Id.* at 865-66.

Accordingly, Petitioner may succeed in challenging his plea on the basis of counsel's defective prediction only if he shows his attorney grossly mischaracterized the likely outcome of the case. *Compare Doganiere v. United States,* 914 F.2d 165, 168 (9th Cir. 1990), *cert. denied,* 499 U.S. 940 (1991)(not ineffective where actual sentence was three years longer than attorney predicted) *with Wilson v. Rose*, 366 F.2d 611, 614 (9th Cir. 1966) (counsel ineffective when he insisted defendant would receive probation, but probation was prohibited by law).

Here, Petitioner does not assert such a "gross mischaracterization," in the realm of the probation versus mandatory life sentence relied upon in *Iaea*, but rather a mischaracterization more akin to the inaccurate advice claimed by the movant in *Shah v. U.S.*, 878 F.2d 1156 (9th Cir. 1989).  In *Shah*, the movant claimed counsel had advised him  that the court would sentence the defendant to no more than eight years, when he was ultimately sentenced to almost twenty years.  The Ninth Circuit rejected this discrepancy as a basis for withdrawal of a guilty plea, citing, *inter alia, Iaea v. Sunn*.  *Shah*, 878 F.2d at 1162.

**Summary** - Petitioner fails to show that trial counsel rendered constitutionally deficient advice in giving a sentencing prediction, and has not shown prejudice from any such deficient advice.


## C.  GROUND SIX: INEFFECTIVE ASSISTANCE AND MEDICATIONS

Petitioner's Ground Six for Relief asserts that trial counsel was ineffective in coaching

1   Petitioner to misrepresent his use of medications at the change of plea.[6]  Respondents do not

2   directly address this claim, but address Petitioner's competency claims in general.

3        At the change of plea hearing, Petitioner denied taking medication:

4            THE COURT: Have you had any drugs, alcohol or medication of
             any type in the last twenty-four hours?
5            MR.  VON HOLTEN: No, sir.

6   (Exhibit G, R.T. 7/31/01 at 5.)

7        For purposes of this Report & Recommendation, the undersigned presumes that trial

8   counsel did in fact advise Petitioner to testify that he had not taken medication, and that

9   counsel knew at the time that Petitioner had taken his regular medication.  The undersigned

10  further presumes that counsel reasonably should have known that this misrepresentation was

11  material insofar as it directed the court away from inquiring into Petitioner competence, rather

12  than  being an immaterial misrepresentation because counsel believed the medication to be

13  non-impairing and thus irrelevant.  Further, based on the foregoing presumptions, the

14  undersigned presumes that counsel's advice fell below "the wide range of professionally

15  competent assistance," *Strickland v. Washington,* 466 U.S. 668, 687 (1984).

16       Petitioner is still required, however, to show that but for this deficient performance,

17  he would not have pleaded guilty and would have insisted on going to trial.  *Hill v. Lockhart*,

18  474 U.S. 52, 58-59 (1985).  Petitioner makes no such allegation.  It is true that counsel's

19  advice, and Petitioner's compliance by lying to the trial court could have impacted the court's

20  findings as to Petitioner's competency.  Petitioner offers no explanation, however, how or why

21  it would have impacted *Petitioner's* decision to enter the plea if counsel had told him to

22  answer the court "yes" rather than "no."

23

24  **E.  SUMMARY**

25       Petitioner has procedurally defaulted on Grounds One, Two, Four, Five, and Seven for

26  ────────────────

27       [6] Petitioner's Amended Petition and  Amended Memorandum argues that this misrepresentation occurred "at sentencing." (#10 at 8b; and #12 at 14.)  The undersigned construes this to be a misnomer, inasmuch as no reference

28  to Petitioner's use of medication is disclosed in the sentencing transcript.  (Exhibit K, R.T. 9/12/01.)  Accordingly, the undersigned construes Petitioner's claim to refer to his statements at the change of plea.

relief, and as to these Grounds, the Petition must be dismissed with prejudice. Petitioner has failed to show ineffective assistance of counsel with respect to Grounds Three, Four, and Six. Accordingly, Ground Four, if not dismissed as procedurally defaulted, and Ground Three and Six must be denied.

## IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Grounds One, Two, Four, Five and Seven for relief in the Petitioner's Amended Petition for Writ of Habeas Corpus, filed February 3, 2005 (#10) be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that Grounds Three and Six for relief in the Petitioner's Amended Petition for Writ of Habeas Corpus, filed February 3, 2005 (#10) be **DENIED**.

## V. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See also* Rule 8(b), Rules Governing Section 2254 proceedings. Thereafter, the parties have ten (10) days within which to file a response to the objections. Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*).

DATED: October 25, 2006

_____
JAY R. IRWIN
United States Magistrate Judge

- 33 -